```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

STERLING D. SCHLEY,

              Plaintiff,
                                        MEMORANDUM AND ORDER
         -against-
                                        18-CV-4918(KAM)
COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

----------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

Sterling D. Schley ("plaintiff") commenced this action *pro se* in August 2018, seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("defendant" or "the Commissioner"), which found that plaintiff was not disabled, and thus not entitled to benefits under the Social Security Act ("the Act").

Presently before the court is the Commissioner's unopposed motion for judgment on the pleadings.  For the reasons herein, defendant's motion is GRANTED.

## Background

Plaintiff alleges that he is disabled because he suffers from grand mal seizures as a result of epilepsy.  (ECF No. 1, Complaint ("Compl."), at 1.)  On February 4, 2016, plaintiff filed an application for disability insurance benefits

pursuant to the Act.  (ECF No. 25-2, Proposed Joint Stipulation of Facts,[1] at 1.)  One month later, plaintiff's application was denied.  (*Id.* at 2.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

On January 30, 2018, plaintiff was represented by counsel at a hearing before ALJ Somattie Ramrup.  (*Id.*)  Both plaintiff and a vocational expert testified before the ALJ.  (*Id.*)  On April 3, 2018, the ALJ issued a decision which found that plaintiff was not "disabled" within the meaning of the Act.  (*Id.*)  Plaintiff requested a review of the ALJ's decision by the Appeals Council.  (*Id.*)  On June 20, 2018, the Appeals Council denied plaintiff's request, rendering the ALJ's decision the Commissioner's final decision.  (*Id.*)

Plaintiff initiated this action *pro se* in federal court on August 27, 2018, filing a form complaint, seeking review of the ALJ's decision.  (*See generally* Compl.)  Plaintiff also moved for leave to proceed *in forma pauperis*.  (*See* ECF No. 2, Motion for Leave to Proceed *in forma pauperis*.)  The court granted plaintiff's motion to proceed *in forma pauperis*, and ordered defendant to serve upon plaintiff the administrative record from the underlying case along with any motions, and

---

[1] Defendant prepared a proposed joint stipulation of facts in this case, but plaintiff never provided any input and has not stipulated to it.

2

ordered plaintiff to respond within 60 days thereafter. (ECF No. 4, Scheduling Order.)

At defendant's request, the court issued an updated briefing schedule, which directed defendant to serve its motion for judgment on the pleadings on plaintiff by December 23, 2019, and plaintiff to serve his opposition on defendant by February 5, 2020. (ECF Dkt. Order Dec. 20, 2019.) Defendant timely served its motion for judgment on the pleadings on plaintiff, and on February 26, 2020, defendant advised the court that plaintiff had failed to serve his opposition, which had been due on February 5. (ECF No. 15, Defendant's Feb. 26, 2020 Motion for Leave to File.) Given plaintiff's *pro se* status, the court granted plaintiff until March 12, 2020 to serve his opposition. (ECF Dkt. Order Feb. 27, 2020.)

The court then received a letter from plaintiff, dated March 19, 2020 (seven days after the extended deadline to serve his opposition), indicating that he had been unable to oppose defendant's motion because he had been "out of state" and suffered "a cluster of seizures." (ECF No. 17, Plaintiff's March 19, 2020 Letter.) Plaintiff also requested that the court appoint an attorney to represent him. (ECF No. 18, Motion to Appoint Counsel.) The court denied his request to appoint an attorney, because there is no right to counsel in civil cases and the court has no authority to compel counsel to represent an

3

individual in a civil case.  (ECF Dkt. Order Apr. 1, 2020.)  The court directed plaintiff to serve his opposition by April 17, 2020, warning that if plaintiff "fail[ed] to serve an opposition by that date, or show good cause for his inability to do so," the court would deem the Commissioner's motion "unopposed." (*Id.*)

On May 5, 2020, defendant informed the court that plaintiff still had not served his opposition.  (ECF No. 20, Defendant's May 5, 2020 Motion for Leave to File.)  Counsel for defendant conveyed that plaintiff had told her that he was unable to serve his opposition because COVID-19 caused closures that prevented him from being able to access a computer.  (*Id.* at 2.)  In light of the global pandemic, the court granted plaintiff another extension of time to serve his opposition, until June 12, 2020.  (ECF Dkt. Order May 12, 2020.)  The court warned that "[n]o further extensions to the briefing schedule [would] be granted," and if plaintiff once again failed to serve an opposition, the court reiterated that it would deem the Commissioner's motion "unopposed."  (*Id.*)

On June 25, 2020, defendant informed the court that plaintiff had not served his opposition.  (ECF No. 22, Defendant's June 25, 2020 Motion for Leave to File.)  Counsel for defendant received a letter from plaintiff, dated June 11, 2020 (the day before the extended deadline to serve his

4

opposition) and addressed to the court, which cited the pandemic and plaintiff's health as the reasons he had been unable to serve his opposition.  (ECF No. 22-1, Plaintiff's June 11, 2020 Letter.)  The court "reluctantly" granted plaintiff yet another extension, until July 9, 2020, emphasizing that plaintiff's opposition was originally due more than five months earlier, on February 5, 2020.  (ECF Dkt. Order June 25, 2020.)

By July 22, 2020, plaintiff had still not served an opposition, and defendant filed the Commissioner's motion for judgment on the pleadings.  (ECF No. 24, Defendant's July 22, 2020 Letter; ECF No. 25, Motion for Judgment on the Pleadings; *see* ECF No. 25-1, Memorandum of Law.)  To date, plaintiff has not filed any opposition to defendant's motion.

## Legal Standard

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  A district court, reviewing the final decision of the Commissioner, must determine whether the correct legal standards were applied, and whether substantial evidence supports the

5

decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings were not supported by substantial evidence, or if the decision was based on legal error.  *Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008).  "Substantial evidence is 'more than a mere scintilla,'" and must be relevant evidence that a "'reasonable mind might accept as adequate to support a conclusion.'"  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 420 U.S. 389, 401 (1971)).  If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld.  42 U.S.C. § 405(g).  Inquiry into legal error requires the court to ask whether the plaintiff has "had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 10 (2d Cir. 1990) (second alteration in original)).  The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might justifiably have reached a different result.  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

6

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). A claimant is disabled under the Act when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (quotation and citation omitted); *see also* 20 C.F.R. § 404.152(a)(4).

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 404.1523. Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process. 20 C.F.R. § 416.945(a)(2). In steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128. At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

8

Where a plaintiff is proceeding *pro se*, as plaintiff is here, the court must "liberally construe" the plaintiff's arguments. *Tipadis v. Comm'r of Soc. Sec.*, 284 F. Supp. 3d 517, 523 (S.D.N.Y. 2018) (citing *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017)). Where a motion is unopposed, as defendant's motion is here, the court "may not grant the unopposed motion based merely upon the opposing party's failure to respond; rather, the [c]ourt 'must review the record and determine whether the moving party has established that the undisputed facts entitle it to judgment as a matter of law.'" *Samuels v. Comm'r of Soc. Sec.*, No. 16-cv-5507, 2019 WL 2526943, at *2 (S.D.N.Y. May 21, 2019), *report and recommendation adopted*, 2019 WL 2524843 (S.D.N.Y. June 19, 2019) (quoting *Mitchell v. Berryhill*, No. 15-cv-6595, 2017 WL 2465175, at *6 (S.D.N.Y. June 7, 2017)).

## Discussion

### I. The ALJ's Disability Determination

Using the five-step sequential process to determine whether a claimant is disabled as mandated by the regulations, the ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since the onset of his alleged disability on October 22, 2014, through his date last insured of June 30, 2016. (ECF No. 26, Administrative Transcript ("Tr."), at 13.)

9

At step two, the ALJ determined that plaintiff had the severe impairment of seizure disorder. (*Id.*) The ALJ also considered plaintiff's impairments of generalized myalgia and arthralgia, which the ALJ found to be non-severe. (*Id.* at 13-14.)

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 14.) The ALJ considered this step under Section 11.02 (Epilepsy), and found that plaintiff had not established that the requisite number of seizures occurred over the requisite number of months despite adherence to prescribed treatment, nor had plaintiff established a marked limitation in one of the listed categories of functioning. (*Id.*)

The ALJ then determined that plaintiff had the RFC to perform a full range of work at all exertional levels, but with certain limitations: plaintiff could perform simple, routine work, but could not work at unprotected heights, around moving mechanical parts, or operate a motor vehicle in the workplace; plaintiff could never work in an overly bright environment; and although plaintiff could interact with supervisors and co-workers, he could not interact with the public. (*Id.*)

In reaching this RFC, the ALJ determined that the "record [did] not indicate [plaintiff] experienced seizures while adhering to prescribed treatment . . . ." (*Id.* at 16.) The ALJ found that plaintiff's statements regarding the "intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.* at 17.)

The ALJ also considered and weighed the medical opinion evidence in the record. The ALJ assigned partial weight to the opinion of a doctor who performed a consultative exam in March 2016, Dr. John Fkiaras. (*Id.* at 18.) The ALJ found that Dr. Fkiaras's opinion that plaintiff had moderate limitations looking up and down and left or right, and with reaching in his upper extremities, was unsupported, because plaintiff "testified that he was in great shape and was even able to walk across bridges spanning Brooklyn and Manhattan, and had no trouble going up and down the stairs of his apartment building." (*Id.* at 19.)

The ALJ assigned little weight to the opinion of Dr. Michael Amoashiy, a board-certified neurologist practicing in Brooklyn who began treating plaintiff in 2017. (*Id.* at 19, 458.) Dr. Amoashiy opined, *inter alia*, that plaintiff could not take public transportation alone and would need more supervision than other workers, and that his seizures would disrupt other

11

workers. (*Id.* at 19.) The ALJ noted that Dr. Amoashiy rendered his opinion in March 2017, which was after the last date plaintiff was insured, in June 2016. (*Id.*) Similarly, the ALJ also assigned little weight to the opinion of Dr. Arthur Yunov, another of plaintiff's treating physicians as of 2017, who opined in April 2017 that plaintiff would need more supervision than other workers and that his seizures would disrupt others at work. (*Id.*)

At step four, the ALJ determined that plaintiff was unable to perform his past relevant work as a hazardous materials worker, or as a site safety manager for hazardous materials. (*Id.* at 20.)

At step five, the ALJ found that there were jobs existing in significant numbers in the national economy that plaintiff could perform, based on his age, education, work experience, and RFC. (*Id.* at 21.) Specifically, the ALJ determined that plaintiff could perform the requirements of jobs such as a merchandise marker, a hand packager, and an addresser. (*Id.*) Accordingly, the ALJ found that plaintiff was not "disabled" under the Act. (*Id.* at 22.)

## II. Assessing the ALJ's Determination

This court may only reverse the ALJ's decision if the ALJ made factual findings that were not supported by substantial evidence, or if the ALJ committed legal error. *Burgess*, 537

F.3d at 127. Even though plaintiff failed to file an opposition brief, or any other substantive documents other than his form complaint, the court will consider the best arguments plaintiff could have made in response to the Commissioner's motion for judgment on the pleadings, in light of his *pro se* status. Still, it is not the role of the court to "determine *de novo* whether [plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996).

The ALJ determined that plaintiff could perform simple, routine work, so long as he did not work at unprotected heights or around moving mechanical parts, operate a motor vehicle, work in an overly bright environment, or interact with the public. (Tr. at 14.) The ALJ noted that plaintiff testified that he experienced episodes of seizures two or three times per week, and that each episode could include multiple seizures. (*Id.*) The ALJ, however, found that based on the evidence, plaintiff's seizures could be avoided if he regularly took his prescribed medication, and abstained from smoking marijuana. (*Id.* at 15-16.)

Substantial evidence supported the ALJ's determination. The record showed that plaintiff first experienced seizures in September 2014, and had another episode in October 2014. (*Id.* at 15.) After the September 2014

13

episode, plaintiff underwent a head CT scan, which was "unremarkable." (*Id.* at 267.)

After both the episode in October 2014 and an episode in March 2015, plaintiff was prescribed medication. (*Id.* at 15; *see id.* at 265-331.) Plaintiff's next episodes of seizures documented in the record occurred in July 2015, "after not being compliant with the medication prescribed in March" 2015, and in September 2015, after which plaintiff "indicated he had been smoking marijuana." (*Id.* at 15.) Plaintiff later told a neurologist that he had failed to take his medication prior to the September 2015 episode, and that at least one of his seizures was triggered by "marijuana use." (*Id.* at 15, 344-45.)

In December 2015, plaintiff consulted with another neurologist, who "noted that [plaintiff] had been tolerating his medication well and had been seizure-free for the prior three months." (*Id.* at 15.) In January 2016, plaintiff underwent an electroencephalogram ("EEG"), which showed that his brain activity was within the normal limits. (*Id.*) In February 2016, he underwent an MRI that showed no ischemia, hemorrhage, or structural cause for epilepsy. (*Id.*) Throughout 2016, plaintiff reported additional episodes of seizures, but also reported that he was "taking a lower dosage of medication" at times, and he then "declined renewal of his medication because

14

he stated he was trying to take himself off the medication."
(*Id.* at 16.)

Based on the foregoing, the ALJ found that plaintiff "experienced seizures in the context of non-compliance with medication and marijuana use," and thus that plaintiff could perform simple, routine work, with certain limitations.  (*Id.*) The evidence before the ALJ was substantial enough to support his determination.  Plaintiff's own statements and the reports of various doctors indicated that plaintiff's seizures were linked to periods during which he declined to take his medication and instead elected to smoke marijuana.

Plaintiff also testified that he traveled on multiple occasions by bus to Virginia, West Virginia, and Pennsylvania, and that he was "in good shape."  (*Id.* at 48-49, 55-60.)  He further testified that his typical day consisted of "go[ing] to agencies" to "try to find work."  (*Id.* at 51-52.)  The ALJ therefore reasonably concluded that plaintiff would be able perform simple, routine work.  Though the ALJ found that medication would likely limit the risk that plaintiff would experience seizures, the ALJ nonetheless recognized that the risk persisted, and observed that plaintiff still had certain limitations; for example, that he should not operate a vehicle. The ALJ's determination was supported by "relevant evidence

15

[that] a reasonable mind might accept as adequate to support a conclusion." *Pratts*, 94 F.3d at 37.

The strongest evidence in the record supporting the position that plaintiff was disabled were the medical opinions of Dr. Amoashiy and Dr. Yunov, both of whom apparently began treating plaintiff in January 2017. Dr. Amoashiy completed a questionnaire in March 2017 indicating that plaintiff had two to three seizures per week, or six to eight per month, that lasted ten to thirty minutes each, and that he was incapable of performing even low stress work. (Tr. at 454, 457.) Dr. Yunov also completed this questionnaire, in April 2017, and indicated that plaintiff had two to three seizures per week, and likewise, that he was incapable of even low stress work. (*Id.* at 459, 462.)

Under the regulations in place at the time plaintiff filed his claim,[2] the ALJ was to "defer 'to the views of the physician who has engaged in the primary treatment of the claimant.'" *Cichocki v. Astrue*, 534 F. Appx. 71, 74 (2d Cir.

---

[2] The Commissioner has revised its rules to eliminate the treating physician rule, and ALJs are now to weigh all medical evaluations, regardless of their sources, based on how well supported they are and their consistency with the remainder of the record. *See* 20 C.F.R. §§ 404.1520b; 416.920c. Claims filed before March 27, 2017, however, are still subject to the treating physician rule. *See* 20 C.F.R. § 404.1527(c)(2). Plaintiff filed his claim on February 4, 2016. Accordingly, the treating physician rule is applicable to the instant case. *See, e.g.*, *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 395 n.5 (S.D.N.Y. 2019).

2013) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)). "'[A] treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)' will be given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Burgess*, 537 F.3d at 128 (describing this principle as the "treating physician" rule). A treating source is defined as a plaintiff's "own physician, psychologist, or other acceptable medical source" who has provided plaintiff "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the plaintiff]." 20 C.F.R. § 404.1502.

When an ALJ affords a treating physician's opinion less than controlling weight, the ALJ must "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33; *see also* 20 C.F.R. § 416.927(c)(2) (requiring the Commissioner to "always give good reasons in [its] notice of determination or decision for the weight [given to a] treating source's medical opinion"). Here, there was no legal error in the ALJ's decision to assign little weight to the opinions of Dr. Amoashiy and Dr. Yunov, because the ALJ provided good reasons for doing so.

17

Dr. Amoashiy and Dr. Yunov completed the questionnaires containing their opinions in March and April 2017, respectively. Based on the available record, it appears that plaintiff first began to consult with both doctors following a seizure in January 2017. (*See* Tr. at 454, 481.) Plaintiff's date of last insured was June 30, 2016. Plaintiff "was required to demonstrate that [he] was disabled as of the date on which [he] was last insured." *Behling v. Comm'r of Soc. Sec.*, 369 F. App'x 292, 294 (2d Cir. 2010) (summary order) (citing 42 U.S.C. § 423(a)(1)(A)).

Neither Dr. Amoashiy's opinion nor Dr. Yunov's opinion purported to relate to the period of time when plaintiff was insured, prior to the end of June 2016. Indeed, neither examined plaintiff prior to January 2017. If plaintiff's condition worsened after June 2016 (either as a result of non-compliance with medication or otherwise), and his worsening condition was noted by doctors nearly a full year later in the spring of 2017, that evidence would not be relevant to the ALJ's decision. *See Vilardi v. Astrue*, 447 F. App'x 271, 272 (2d Cir. 2012) (summary order) ("reliance on evidence demonstrating a worsening of [plaintiff's] condition after [the date last insured] is of little value").

The ALJ, therefore, did not commit legal error by assigning little weight to the two medical opinions that were

18

rendered in 2017, even though they were opinions of treating physicians, because those opinions were only applicable to the period after plaintiff was last insured. *See Susan M. v. Comm'r of Soc. Sec.*, No. 18-cv-0623, 2019 WL 2754480, at *6 (N.D.N.Y. July 2, 2019) (ALJ "provided sufficient reasons for . . . afford[ing] little weight to [an] opinion[] from [a] treating physician . . . because it did not apply to the period before Plaintiff's date last insured."); *Squilla v. Comm'r of Soc. Sec.*, No. 17-cv-6493, 2018 WL 5847118, at *2 (W.D.N.Y. Nov. 8, 2018) ("Because the claimant's treating physician was unable to relate the claimant's impairments back to the date last insured, the opinion is entitled to less weight.").

Overall, the ALJ's determination that plaintiff was not disabled during the relevant period was supported by substantial evidence. The ALJ concluded that at least up until plaintiff's date last insured, plaintiff's seizures could be managed. The evidence before the ALJ showed that plaintiff went three months without any seizures while adhering to his medication, and EEG, MRI, and CT examinations throughout the relevant period showed normal brain activity. Although plaintiff likely possessed some risk of experiencing seizures while at work, even with medication, the ALJ determined that plaintiff could still perform certain kinds of work, so long as that risk was accounted for by the employer. There was

substantial evidence from which the ALJ made that determination. *See Castillo v. Barnhart*, No. 01-cv-9632, 2003 WL 21921269, at *11 (S.D.N.Y. Aug. 11, 2003) ("[t]here was substantial evidence from which the ALJ could conclude that [plaintiff]'s seizure disorder could be controlled by medication").

## Conclusion

The court has liberally construed the possible arguments that plaintiff could have made in this case, and finds that the ALJ's decision was supported by substantial evidence, and that it did not contain any legal errors. Accordingly, the Commissioner's motion for judgment on the pleadings is GRANTED. The Clerk of Court is respectfully directed to enter judgment for defendant, serve a copy of this Memorandum and Order and the judgment on plaintiff, note service on the docket, and close this case.

**SO ORDERED.**

Dated:    Brooklyn, New York
            August 27, 2020

                                            /s/
                                      Hon. Kiyo A. Matsumoto
                                      United States District Judge